UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

CHRISTOPHER ALAN PACE,

            Plaintiff,

    v.                            CAUSE NO. 1:24cv510 DRL

FRANK BISIGNANO,
Commissioner of the Social Security
Administration,

            Defendant.

## OPINION AND ORDER

Christopher Pace appeals the Social Security Commissioner's final judgment denying him disability insurance benefits and supplemental security income. Mr. Pace requests remand of his claim for further consideration. Having reviewed the underlying record and the arguments on review, the court affirms the Commissioner's decision.

## BACKGROUND

Mr. Pace suffers from various impairments, including ankylosing spondylitis [R. 359], cervical spine degenerative disc disease [R. 413], mild to moderate obesity [R. 384], and vertigo [R. 564]. He filed for Title II disability insurance benefits and Title XVI supplemental security income on March 4, 2022 [R. 241-52], alleging disability since October 21, 2021 [R. 244]. He was 47 years old when he applied for these benefits [R. 241]. He has a high school education and two additional years of college education [R. 265]. Before filing for disability, he worked as a waste water treatment operator [R. 266].

The Social Security Administration denied Mr. Pace's claim on August 17, 2022 [R. 124, 129] and his request for reconsideration on December 29, 2022 [R. 145, 151]. The administrative

law judge (ALJ), following a review of records and an August 31, 2023 hearing, denied Mr. Pace's claim on October 27, 2023 [R. 38]. On October 1, 2024, the Appeals Council denied his request for review [R. 1]. On December 2, 2024, Mr. Pace filed this timely appeal under 42 U.S.C. § 405(g). A stay attendant to a government shutdown delayed its ripening.

## STANDARD

The court has authority to review Appeals Council decisions under 42 U.S.C. § 405(g); however, review is bound by a strict standard. The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and [his] conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (quotation omitted). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). This high deference is lessened whenever the ALJ's findings are built on errors of fact or logic. *Thomas*, 745 F.3d at 806.

## DISCUSSION

An individual is disabled when he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This impairment must be so severe that the individual "is not only unable to do his previous work but cannot, considering his age,

2

education, and work experience, engage in any other kind of substantial gainful work [that] exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

When considering a claimant's eligibility for disability benefits, an ALJ must apply a standard five-step analysis, asking whether (1) the claimant is currently employed; (2) the claimant's impairment or combination of impairments is severe; (3) his impairments meet or exceed any of the specific listed impairments that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) the claimant can perform his former occupation, if the impairment has not been listed as conclusively disabling, given the claimant's residual functioning capacity (sometimes called one's RFC); and (5) the claimant cannot perform other work in the national economy given his age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *Id.*

At step one, the ALJ determined that Mr. Pace had not engaged in substantial gainful activity since his application date, so he proceeded to step two [R. 20]. There the ALJ determined Mr. Pace had several severe impairments, including ankylosing spondylitis, cervical spine degenerative disc disease, mild to moderate obesity, and vertigo [*id.*]. The ALJ further determined Mr. Pace had many non-severe impairments: migraine headaches, mixed hyperlipidemia, plantar fasciitis, mild degenerative joint disease of the bilateral knees, multilevel degenerative changes of

the lumbar spine with sclerosis, and mild acetabular joint space narrowing of the hips [*id.*].[1] The ALJ also found non-severe anxiety and depression which are "seemingly situational in nature" and do not affect Mr. Pace's ability to "perform basic mental work activities" [*id.*].

At step three, the ALJ decided these impairments didn't meet or equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 [R. 25]. The ALJ thus proceeded to step four, where he concluded that Mr. Pace had the residual functioning capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), subject to certain modifications [R. 26]. He found that Mr. Pace "is reasonably limited to sedentary exertion work with only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling" [R. 35]. He further explained that Mr. Pace's limitations "preclude[] all work that would require climbing ladders, ropes, or scaffolds" [*id.*]. The ALJ found that Mr. Pace "needs to avoid concentrated exposure to vibrations and hazards, including operational control of dangerous moving machinery, unprotected heights, . . . and slippery/uneven/moving surfaces" [*id.*]. All said, the ALJ concluded that Mr. Pace was unable to perform his past relevant work [R. 37].

Finally, at step five, the ALJ considered Mr. Pace's age, education, work experience, and residual functioning capacity, as well as testimony from a vocational expert, to conclude that there were 71,000 jobs in the national economy that he could perform: document preparer (19,000), call out operator (45,000), and hand mounter (7,000) [R. 38]. Based on this analysis, the ALJ concluded that he wasn't under a disability from October 21, 2021 to October 27, 2023 [R. 38].

Mr. Pace appeals the administrative decision and challenges the ALJ's determination on two grounds. He says the ALJ (1) improperly weighed the medical source opinions of Dr. Alicia

---

[1] The ALJ included impairments that did not remain severe after twelve months, even if initially severe.

Julovich and Dr. Anuradha Kollipara regarding Mr. Pace's physical and mental health, and (2) failed to show Mr. Pace was able to perform a significant amount of jobs in the national economy. The court addresses each in turn.

A. *Medical Source Opinions.*

Mr. Pace argues that the ALJ failed to properly weigh certain medical opinions. His claim was filed after March 27, 2017, so the ALJ's evaluation of medical opinions is governed by 20 C.F.R. § 404.1520c. This regulation requires the ALJ to evaluate the medical opinions and explain the persuasiveness of each. *See* 20 C.F.R. § 404.1520c(a), (b). Each opinion must be evaluated using the factors in 20 C.F.R. § 404.1520c(c)(1)-(5): supportability, consistency, relationship with the claimant, and specialization, along with other factors the ALJ may incorporate.

Of these, supportability and consistency are the most important. 20 C.F.R. § 404.1520c(b)(2). The ALJ must explain how he considered the supportability and consistency factors for each medical opinion but is not required to explain how he considered the other factors. *Id.* A failure to discuss supportability and consistency requires remand. *See Willis v. Acting Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 116679, 9 (N.D. Ind. June 30, 2022). Here, as in all parts of an administrative decision, the ALJ must build a logical and accurate bridge between evidence and conclusions to enable meaningful review. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). He also must consider "all relevant medical evidence" and may not "selectively cite only the evidence that supports his conclusion." *Bakke v. Kijakazi*, 62 F.4th 1061, 1067 (7th Cir. 2023) (citation omitted); *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020).

"ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). They may not "make independent medical findings regarding whether certain activities are inconsistent with

a particular medical diagnosis." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (citing *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996)). "Playing doctor" is "a clear no-no," as is giving "meager attention" to conditions. *Goins v. Colvin*, 764 F.3d 677, 680-81 (7th Cir. 2014). To evaluate whether an ALJ has made impermissible medical determinations, the court looks to whether the ALJ made "independent findings to fill the gaps in the record" and whether any of "the ALJ's limitations conflict with a medical source of record." *Holsinger v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 53840, 27-28 (N.D. Ind. Mar. 29, 2018).

1. *Dr. Alicia Julovich.*

Mr. Pace argues that the ALJ improperly evaluated Dr. Alicia Julovich's medical opinion. On July 18, 2022, Mr. Pace underwent a consultative physical exam with Dr. Julovich connected to his application for benefits [R. 518-40]. Dr. Julovich found Mr. Pace had an antalgic gait with a limp and low normal sustainability and stability; slight difficulty walking on heels and tandem walking; thoracic kyphosis (rounding of the back); abnormal straight leg raising while seated and supine; cervical, lumbar, bilateral hip, and bilateral knee pain; low normal ability to ambulate effectively; and an abnormal sensory response to vibration in his right leg [R. 525-27]. She believed Mr. Pace could stand or walk for at least two hours in a workday, "but not continuously and with frequent breaks" [R. 526]. She found that he could lift ten pounds with each arm and together with both arms [R. 521] but thought he could not lift or carry less than ten pounds frequently or over ten pounds occasionally with an unoccupied arm [R. 526].

The administrative decision recounted Dr. Julovich's examination [R. 30-32, 35] and accepted the physician's medical opinion in large measure [R. 34]. Mr. Pace focuses on two areas that he says the ALJ improperly discredited. First, Mr. Pace claims that the ALJ discounted the opinion that Mr. Pace could stand and walk for "at least" two hours in an eight-hour day (but

not continuously and with frequent breaks) [R. 31-32]. The ALJ found that "use of the term 'at least' in this instance is vague and not well-defined" and that Dr. Julovich's opinion appeared to reflect Mr. Pace's "minimal capacity that he remains capable of performing in ability to stand or walk," rather than reflected the maximum residual functional capacity of his performance [*id.*]. Second, the ALJ found that Dr. Julovich's conclusion that Mr. Pace could not use an unoccupied arm to lift or carry ten pounds frequently or over ten pounds occasionally was not supported by clinical findings [R. 31].

Mr. Pace argues that the administrative decision failed to incorporate these crucial limitations from Dr. Julovich's opinion. In his view of the record, in determining that he had the residual functional capacity to perform sedentary work, the administrative decision excluded limitations that he couldn't stand or walk continuously for two hours and needed frequent breaks, and that he couldn't lift or carry with one arm less than ten pounds frequently or more than ten pounds occasionally [R. 35]. In response, the Commissioner contends that the ALJ addressed these opinions with sufficient explanation, *see Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (reciting minimal articulation requirement that ALJ provide a logical bridge from evidence to conclusion), and cited evidence elsewhere in the record that supports his conclusion.

The Commissioner argues that the ALJ addressed Dr. Julovich's opinion about standing and walking by describing it as vague and ill-defined. The ALJ used this vagueness critique to describe Dr. Julovich's opinion that Mr. Pace could stand or walk for "at least" two hours a workday—a fair observation to make in truth—but not to discredit the limitation against standing or walking continuously or the requirement that any standing or walking occur with frequent breaks [R. 31-32]. Treating this critique, as the government seems to do, as covering more than the minimum duration for standing or walking would make no sense. For instance, the adverbial

phrase "at least" makes no sense as a minimum bound for standing or walking continuously—one can't stand more continuously than continuously.

But the court finds no error today for a different reason. The ALJ expressed a rationale that incorporated the concern about standing or walking continuously or without frequent breaks. Three times the ALJ acknowledged, without clearly rejecting, Dr. Julovich's opinion that Mr. Pace could stand or walk for at least two hours a workday, albeit limited in that he could not do so continuously and needed frequent breaks [R. 31, 34-35]. Indeed, the ALJ relied on the doctor's opinion—namely, "an inability to sustain prolonged standing [and] walking"—to discount the less persuasive viewpoints of agency physicians [R. 35]. One cannot say the ALJ disregarded Dr. Julovich's opinion on this record.

The ALJ also determined that Dr. Julovich's findings "reasonably comport with sedentary exertion" [R. 32] and thereby incorporated the doctor's limitations about standing and walking into Mr. Pace's residual functional capacity. Sedentary work, which the ALJ found Mr. Pace could perform and required the vocational expert to consider in identifying available jobs [R. 72-73], only requires occasional walking or standing—not continuous walking or standing. *See Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citing 20 C.F.R. §§ 404.1567(a), 416.967(a)); *see also Kapusta v. Sullivan*, 900 F.2d 94, 96 (7th Cir. 1989). By definition, a sedentary job means one that involves sitting; and, though walking or standing might be necessary in carrying out job duties, it remains occasional only, and not more than about two hours of a normal workday. *See Diaz*, 55 F.3d at 306. This sedentary classification thus accommodated the limitation against continuous walking or standing and otherwise the requirement of frequent breaks.

The court observes that the ALJ's hypothetical posed to the vocational expert required the expert to assume "at least" two hours of standing or walking [R. 72], and by that perhaps

introduced the same vagueness that he criticized the doctor for introducing, but the court views this passing phrase as harmless. An error is harmless, and will not justify remand, when the court is "convinced that the ALJ will reach the same result." *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)). "An error is harmless if, upon examination of the record, the court can 'predict with great confidence what the result of remand will be.'" *Id.* (quoting *Butler*, 4 F.4th at 504). The administrative decision was thorough in addressing the limitation about standing and walking, and the ALJ's hypothetical otherwise made it clear that "at least" was just an inconsequential oversight in phrasing. After all, the ALJ twice made it clear that he was focused on sedentary level work only [R. 72-73], and he specified that Mr. Pace would need to sit six or more hours in an eight-hour workday [R. 72]. The court thus finds no error in the administrative decision's handling of Dr. Julovich's opinion against continuous standing or walking for Mr. Pace.

For his second argument on appeal, Mr. Pace says the administrative decision improperly rejected Dr. Julovich's lift and carry limitations. He says Dr. Julovich's conclusion that he couldn't use an unoccupied arm to lift or carry less than ten pounds frequently or more than ten pounds occasionally was supported by and consistent with medical records and his hearing testimony. Dr. Julovich found that Mr. Pace could lift ten pounds with either arm (and both) [R. 521], but that he could not lift or carry less than ten pounds frequently or more than ten pounds occasionally [R. 526]. At the August 2023 administrative hearing, the ALJ asked him, "How much can you lift and carry without causing more problems for yourself?" He responded, "Maybe five, ten pounds" [R. 64]. Mr. Pace says his answer pertained only to how much he could carry or lift at one time, consistent with Dr. Julovich's assessment. The Commissioner argues in response that the ALJ's decision is fully supported by the record.

The ALJ did not err in addressing Dr. Julovich's lift and carry limitations. To start, the administrative decision acknowledged Dr. Julovich's assessment that Mr. Pace could lift ten pounds with either and both arms and its consistency with Mr. Pace's testimony [R. 30, 31, 34]. Indeed, Mr. Pace testified that he could carry five to ten pounds without causing problems, never suggesting that he could only do so once in a workday or with limited frequency [R. 64]. The ALJ incorporated this weight limitation into the hypothetical posed to the vocational expert—namely, that Mr. Pace could carry "ten pounds at most" [R. 72].

The real debate seems to be about frequency. Dr. Julovich also opined that Mr. Pace could not lift or carry less than ten pounds with one arm frequently (or more than ten pounds occasionally) [R. 526]. The government argues that other medical findings in the record support the ALJ's determination that this opinion about frequency was inconsistent with clinical findings. In large measure, the government points to strength findings from three physicians—that Mr. Pace had "normal" upper and lower extremity strength (classified as 5 out of 5) [R. 414, 527, 566, 568]. The court has reservations about just assuming that normal extremity strength always means one can lift a certain weight frequently, as lifting and carrying physiologically will often involve more of the body that just one's arms or legs.[2] But the ALJ must just "minimally articulate" his reasoning, *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008), and the presence of normal strength in one's arms and legs has been found sufficient to discount an opinion against frequent lifting before, *see Desotelle v. Kijakazi*, 2023 U.S. App. LEXIS 15777, 9 (7th Cir. June 23, 2023). Lighter weights under ten pounds, even for someone with credible limitations with his back and spine,

---

[2] To this point, Dr. Julovich observed that Mr. Pace had normal strength in his upper or lower extremities but still could not lift under ten pounds frequently [R. 526-27].

perhaps lends to the ALJ's assessment. The court cannot say the ALJ misread or mischaracterized the record or played doctor in his appraisal of Mr. Pace's residual functional capacity.

Even so, the ALJ offered a second rationale in addressing this lift and carry limitation for his administrative decision. The ALJ found that Dr. Julovich's medical opinion was "reasonably suggestive of and consistent with a capacity to sustain sedentary exertion work" [R. 34]. By definition, sedentary work involves only "occasional lifting of objects up to ten pounds." *Diaz*, 55 F.3d at 306. The ALJ required the vocational expert to consider alternative work that would be limited to sedentary work, and thus carrying and lifting no more than ten pounds and only occasionally [R. 72]. Mr. Pace's argument that his residual functional capacity passed over this concern about frequency is not compelling. Instead, the administrative decision had the support of substantial evidence as well as an articulated logical bridge from the record to its findings.

2. *Dr. Anuradha Kollipara.*

Mr. Pace argues the ALJ failed to evaluate Dr. Kollipara's medical opinions properly. Dr. Kollipara examined Mr. Pace on August 15, 2023 and recorded Mr. Pace's statements that he experienced pain in his back, shoulder, neck, and hip that made it difficult to walk, sit, and stand; that he could not walk a block without pain and needed to take frequent, unscheduled breaks; and that he had needed to miss work more than four times per month [R. 558]. Dr. Kollipara conducted a musculoskeletal exam and determined Mr. Pace had limited range of motion in his lower extremities and pain on movement of all extremities [R. 561]. In his assessment and plan, Dr. Kollipara restated Mr. Pace's pain areas and difficulties walking, sitting, and standing in the discussion of his arthritis and spondylitis [R. 561, 563]. Dr. Kollipara also performed a mental capacity assessment [R. 545-547], finding Mr. Pace had "marked" or "extreme" limitations related to six areas of mental functioning, "moderate" limitations related to three areas, and mild or no

limitations for the remaining areas [*id.*]. Dr. Kollipara noted that the mental capacity assessment was supported by medical or clinical findings of depression and ankylosing spondylitis [R. 547] and that Mr. Pace was "cooperative with normal mood, affect, and cognition" [R. 561].

The ALJ determined that Dr. Kollipara's assessment identifying "areas of extreme and marked dysfunction, made after only two exams, is not found reasonably consistent with nor supported by the absence of need for any significant mental health treatment" [R. 24]. The ALJ determined that conservative use of psychotropic medication adequately treated Mr. Pace such that he was stable, consistent with minimal clinical exam findings of deficit, including Dr. Kollipara's other clinical psychiatric findings [*id.*]. In reaching this conclusion, the ALJ cited various record evidence that medication kept Mr. Pace's anxiety and depression stable [*id.*]. The ALJ then considered the record of Mr. Pace's mental health condition, assessed it as "not severe," and explained that he reached this determination having found that Mr. Pace has mild limitations for all four mental functioning areas (called the "paragraph B" criteria) [*id.*].

Mr. Pace argues that the ALJ failed to evaluate and incorporate two of Dr. Kollipara's opinions. He first says the ALJ rejected Dr. Kollipara's assessed "marked" and "extreme" mental health limitation from the mental capacity assessment but never rejected the remaining limitations or integrated them into his residual functional capacity finding. Second, he says the ALJ didn't evaluate Dr. Kollipara's opinion about Mr. Pace's physical dysfunction at all. The Commissioner responds that the ALJ's finding that Mr. Pace's mental health was "not severe" addressed the whole of Dr. Kollipara's assessment and that Dr. Kollipara's statements about Mr. Pace's physical state were reiterations of his subjective complaints and not medical opinions as defined by the pertinent regulations. *See Jones v. Dudek*, 134 F.4th 991, 997 (7th Cir. 2025) (citing 20 C.F.R.

12

§§ 404.1513(a)(2), 416.913(a)(2)) ("medical opinion" defined to "include statements about what the claimant 'can still do'" and isn't limited to describing specific workplace demands).

The Commissioner has the better of this. The ALJ began his assessment of Mr. Pace's mental health impairments by stating that his anxiety and depression, considered in isolation or together, no more than minimally limited his ability to perform basic mental work activities and were thus nonsevere [R. 20]. He also noted that these issues seemed situational and were generally stable with use of medications, according to the clinical exam findings [*id.*]. After considering much of Mr. Pace's mental health record in detail [R. 20-23], including his hearing testimony, and finding that Mr. Pace's mental health was relatively well managed, the ALJ weighed Dr. Kollipara's evaluation. He noted Dr. Kollipara's observations that Mr. Pace wasn't in acute distress; was cooperative; presented with normal mood, affect, and cognition; and that his depression was secondary to his physical complaints [R. 24; *see also* R. 561, 568, 574]. In that context, the ALJ noted Dr. Kollipara's mental capacity assessment, finding areas of extreme and marked dysfunction, but also observed that this assessment occurred after only two exams and that it presented contrary to the remainder of the record [R. 24; *see also* R. 545-47]. Weighing this analysis, it seems clear that the ALJ's assessment that Mr. Pace's mental health issues were not severe was comprehensive and considered all of Dr. Kollipara's mental condition assessment.

Mr. Pace presses that the ALJ never mentioned Dr. Kollipara's assessed moderate limitations and that the ALJ is obliged to confront evidence contrary to his conclusion to explain why he rejected it. Dr. Kollipara identified moderate limitations in two categories: (1) concentration, persistence, or pace, and (2) interacting with others [R. 546-47]. More particularly, he opined that Mr. Pace had moderate limitations in his ability to ignore or avoid distractions while working; moderate limitations in his ability to work closely with others without interrupting

13

or distracting them; and moderate limitations in his ability to cooperate with others or ask for needed help [*id.*]. Mr. Pace faults the ALJ for passing over these moderate limitations.

The ALJ assessed these same "paragraph B" criteria, found that Mr. Pace had mild limitations in both, and concluded that his mental health issues were nonsevere [R. 24]. Though the administrative decision may not have specifically recited Dr. Kollipara's assessment in these areas, the ALJ trod the very same ground and thus considered them and came to a different conclusion based on the entire record. To the extent there are differences between the assessment of severe impairments and residual functional capacity—differences the ALJ acknowledged [R. 25]—the ALJ found that Mr. Pace's mental health challenges were adequately managed with medication [R. 20], indicating that they would not factor into an evaluation of residual functional capacity. In all, the ALJ adequately evaluated Dr. Kollipara's opinion of Mr. Pace's mental health challenges.

As for Mr. Pace's physical challenges, the Commissioner correctly points out that Dr. Kollipara's assessment isn't a medical opinion under the regulations. Rather, it is other medical evidence. "A medical opinion is a statement from a medical source about what [a patient] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" in certain abilities. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). In contrast, "[o]ther medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [his] impairments, [his] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3). The difference is important because an ALJ is required to "evaluate the persuasiveness" of a medical opinion and explain how he considered it, *Jones*, 134 F.4th at 994 (quoting 20 C.F.R. §§ 404.1520c(a), (b)(2) and 416.913c(a), (b)(2)), but need not

otherwise discuss every piece of evidence in the record provided he fully engages with each "line of evidence," *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021).

Mr. Pace says Dr. Kollipara's assessment—particularly that Mr. Pace's arthritis and spondylitis made it difficult for him to walk, sit, and stand [R. 561, 563]—was a medical opinion. But a statement that walking, sitting, and standing are difficult doesn't explain what Mr. Pace can still do or articulate a limitation or restriction on his abilities. Rather, it seems to reiterate Mr. Pace's medical history as he explained it to Dr. Kollipara [R. 558] or otherwise express judgments about the nature and severity of Mr. Pace's impairments as a prelude to a medical opinion.[3] Rephrased, it qualified as other medical evidence.

Mr. Pace disagrees and argues that statements about whether a claimant can walk, sit, or stand "clearly fall within the definition of medical opinions," citing *Jones*, 134 F.4th at 997. But *Jones* is clear that medical opinions are in fact about what a claimant "can still do," including "whether a claimant can perform specific workplace demands" like walking, sitting, and standing. *Id.* Dr. Kollipara's statement said nothing about whether Mr. Pace could perform these specific demands or under what limitations, only that he found them difficult. Mr. Pace doesn't argue that the ALJ otherwise failed to consider evidence about his ability to walk, sit, or stand; and, because Dr. Kollipara's statements on these subjects were not medical opinions, the ALJ wasn't required to consider them in the manner Mr. Pace advances. Altogether, the ALJ adequately evaluated Dr. Kollipara's statements about Mr. Pace's physical and mental health condition.

---

[3] The assessment is unlikely to constitute clinical findings, as Dr. Kollipara's physical exam did not describe any assessment of Mr. Pace's ability to walk, sit, or stand [R. 561].

B. *Jobs in the National Economy.*

Mr. Pace argues that the ALJ improperly relied on testimony from a vocational expert that identified jobs in significant numbers in the national economy. Step five requires an ALJ to consider whether the claimant can adjust to work that exists "in significant numbers in the national economy." *Milhelm v. Kijakazi*, 52 F.4th 688, 690 (7th Cir. 2022) (quoting 20 C.F.R. §§ 404.1560(c), 416.960(c)). The law "does not provide a clear baseline for how many jobs are needed" to be "significant." *Id.* at 696. 140,000 jobs in the national economy is "well above the threshold for significance," *id.* (quoting *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011)), and the law has favored (from other circuits) numbers ranging from 10,000 to 32,000 national jobs as "significant," *id.* at 697 (citing cases). Here, the ALJ found there were 71,000 jobs in the national economy Mr. Pace could perform: document preparer (19,000), call out operator (45,000), and hand mounter (7,000) [R. 38]. Mr. Pace argues these jobs are obsolete and should not be seen as reliable. But if a question of substantial evidence, the court cannot say the administrative decision lacked it.

In addition, the Commissioner contends that Mr. Pace failed to preserve this objection, at least for the jobs of call-out operator and hand mounter. Mr. Pace doesn't reply to this point. "[A] claimant must object to the [vocational expert's] testimony or otherwise indicate that the testimony is unreliable during the administrative hearing (or after in a posthearing brief) to preserve his objection." *Leisgang v. Kijakazi*, 72 F.4th 216, 219-20 (7th Cir. 2023) (citing *Fetting v. Kijakazi*, 62 F.4th 332, 337-38 (7th Cir. 2023)); *accord Thorpe v. Bisignano*, 148 F.4th 432, 434 (7th Cir. 2025) ("claimants have an obligation to object to an expert's testimony during the hearing, otherwise that objection is forfeited"). Mr. Pace declined to question or object to the vocational expert's testimony at the hearing [R. 74]. He first raised the issue with the Appeals Council,

16

challenging only the role of document preparer [R. 357]. Accordingly, he forfeited any objection to the vocational expert's testimony concerning the jobs of call-out operator and hand mounter. *See Leisgang*, 72 F.4th at 219-20.

The Commissioner doesn't defend the ALJ's reliance on the document preparer position, which Mr. Pace calls obsolete. *See Dearth v. Berryhill*, 2018 U.S. Dist. LEXIS 38847, 11 (N.D. Ind. Mar. 9, 2018); *Kordeck v. Colvin*, 2016 U.S. Dist. LEXIS 20247, 27 (N.D. Ind. Feb. 18, 2016). Instead, the Commissioner says there are still significant jobs in the national economy available to Mr. Pace—52,000 combined jobs for call-out operators and hand mounters. The ALJ had discretion to decide, using substantial evidence, whether the number of available jobs was significant. *See Milhelm*, 52 F.4th at 696. The ALJ considered the number of positions in the national economy for each of the three jobs identified by the vocational expert, whose opinion provided substantial evidence of the existence of these jobs. Though no firm baseline exists to determine what number proves to be significant, 52,000 jobs is enough. *See id.* at 697; *Weatherbee*, 649 F.3d at 572. Accordingly, there was substantial evidence to support the ALJ's opinion that there was a significant number of jobs available to Mr. Pace in the national economy.

## CONCLUSION

Accordingly, the court DENIES Mr. Pace's request for remand [8] and AFFIRMS the Commissioner's administrative decision.

SO ORDERED.

March 25, 2026                    *s/ Damon R. Leichty*
                                 Judge, United States District Court

17